UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

SUPERIOR CONTRACT CLEANING INC

CIVIL ACTION NO. 25-0544

VERSUS

JUDGE S. MAURICE HICKS, JR.

QUALITY WHOLESALE & SUPPLY INC

MAGISTRATE JUDGE AYO

**MEMORANDUM RULING**

Before the Court is a bankruptcy appeal by Appellant Superior Contract Cleaning Inc ("Superior") from the Bankruptcy Court's April 2025 Order. See Record Document 1. Superior requests that the April 2025 Order be reversed and that this Court disallow Appellee Quality Wholesale & Supply Inc's ("QWS") claim completely. See Record Document 10 at 20. QWS filed an Appellee Brief. See Record Document 11. Superior filed an Appellant Reply Brief. See Record Document 12. For the reasons set forth below, the Bankruptcy Court's Order is **AFFIRMED IN PART AND REVERSED IN PART**.

**BACKGROUND**

On or around December 1, 2022, Superior purchased eight Phoenix 4800 desiccant dehumidifiers from QWS for the sum of $462,733.65. See Record Document 11 at 8. That same day, QWS issued Superior an invoice/sales receipt, stating the total amount due. See id. In January of 2023, Superior approached QWS to purchase additional dehumidifiers. See id. On January 23, 2023, Superior purchased 197 portable dehumidifiers from QWS for $557,450.60. See id. QWS issued Superior an additional

invoice/sales receipt memorializing the second sale and stating the sale price. See id. The total amount owed from these two transactions was $1,018,13.10. See id.

On February 1, 2023, QWS sent Superior a written statement detailing the outstanding amount due, including a provision stating, "account not paid within 30 days of the date of the invoice are subject to a 1.5% monthly finance charge." See id. This statement also included an amount for interest on the unpaid balance as of February 1, 2023. See id. Superior did not pay QWS the agreed upon purchase price for the dehumidifiers. See id.

On November 27, 2023, QWS sent Superior a written demand pursuant to the Louisiana Open Account statute. See id. The demand stated that Superior owed QWS the following: $843,163.10 for the unpaid balance on the dehumidifier transactions; 1.5% monthly interest on the outstanding balance from February 1, 2023; and attorney's fees and costs. See id. at 8–9. On February 1, 2024, QWS filed a petition on an open account and for damages in the 29th Judicial District Court for the Parish of St. Charles, Louisiana, Case No. 93757. See id. at 9.

On March 11, 2024, Superior made a payment of $400,000 to QWS. See id. QWS moved for summary judgment in state court and obtained a judgment in the principal amount of $384,945.88 dated June 18, 2024 ("the state court judgment"). See id. The state court judgment also awarded interest from the date of judicial demand, attorney's fees, and costs; however, it did not specify the dollar amount of interest, fees, and costs. See id. Superior did not appeal the state court judgment. See id.

Following the entry of the state court judgment, Superior made two payments of $10,000 each; therefore, the principal amount owed by Superior as of the Petition Date was $364,945.88, plus interest, fees, and costs. See id. On July 10, 2024, QWS recorded the state court judgment in the mortgage and conveyance records for Lafayette Parish. See id. On September 13, 2024, QWS filed a petition to make the state court judgment executory and for a writ of fieri facias in Lafayette Parish. See id. at 9–10. QWS attached a copy of the state court judgment to the petition and a document entitled "STATEMENT OF SUMS DUE," which contained a table of amounts, including attorney's fees, interest, and costs. See Record Document 10 at 6. Superior claims these amounts were not provided in any previous court order or ruling. See id. This document also used an interest rate of 18% per annum. See id. On or about September 19, 2024, Superior filed a petition for injunctive relief in Lafayette Parish, seeking to enjoin the issuance of any writ to enforce the state court judgment. See Record Document 11 at 10. The petition was denied, and the bankruptcy case commenced the following day. See id.

On or about November 15, 2024, QWS timely filed Claim No. 6 as an unsecured claim in the amount of $610,580.51, which included the principal amount owed by Superior, plus interest and attorney's fees. See id. QWS attached an additional document entitled "Exhibit A to Proof of Claim," which included different amounts than QWS's "STATEMENT OF SUMS DUE" filed previously with the Lafayette Parish Court. See Record Document 10 at 7. On February 18, 2024, Superior filed an objection to Claim No. 6, urging the Bankruptcy Court to disallow QWS's claim. See Record Document 11 at 10. On April 8, 2025, the Bankruptcy Court held an evidentiary hearing on Superior's objection. See id. On April 21, 2025, the Bankruptcy Court entered an Order allowing

3

QWS's Claim No. 6 in the amount of $390,150.12, consisting of $364,945.88 in principal and $25,204.24 in interest. See id. at 10–11. The Bankruptcy Court disallowed QWS's claim for attorney's fees as set forth in its Claim No. 6. See Record Document 1-1 at 2. On April 23, 2025, Superior filed a notice of appeal from the Bankruptcy Court's Order. See Record Document 10 at 8.

## LAW AND ANALYSIS

**I. Jurisdiction and Standard of Review.**

This Court has jurisdiction over Superior's appeal from the Bankruptcy Court's Order pursuant to 28 U.S.C. § 158(a). In reviewing a decision of a bankruptcy court, this Court functions as an appellate court and applies the standards of review generally applied in a federal court of appeals. See Matter of Webb, 954 F. 2d 1102, 1103–04 (5th Cir. 1992). Conclusions of law and mixed questions of fact and law are reviewed *de novo*. See Matter of Herby's Foods, Inc., 2 F. 3d 128, 131 (5th Cir. 1993); see also Ward v. Cross Keys Bank, No. 21-01629, 2021 WL 4060397, at *8 (W.D. La. Sept. 7, 2021). Findings of fact are not to be set aside unless clearly erroneous. See Matter of Herby's Foods, 2 F. 3d at 130–31. "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." Matter of Missionary Baptist Found. of Am., 712 F. 2d 206, 209 (5th Cir. 1983). Thus, appellate courts will sustain a bankruptcy court's factual findings "absent a firm and definite conviction that the bankruptcy court made a mistake." In re Ragos, 700 F. 3d 220, 222 (5th Cir. 2012) (citation omitted).

**II. Summary of the Arguments.**

    (a) Superior's Appellant Brief.

Superior presents five issues on appeal. See Record Document 10 at 4–5. First, Superior argues that the state court judgment is unenforceable under Louisiana law because it is not a proper final judgment; it cannot be reduced to a sum certain due under its terms. See id. at 10. Superior asserts that because the state court judgment underlying Claim No. 6 includes an indeterminate award of attorney's fees, it is unenforceable because it is not a proper final judgment. See id.

Second, Superior avers that amendments to the substance of a judgment outside of established statutory procedures for such amendments render that judgment absolutely null. See id. It contends that Louisiana Code of Civil Procedure Article 1951 only allows a court to alter the phraseology of a judgment or to correct deficiencies in the decretal language or errors of calculation, not make substantive changes. See id. at 11. Thus, Superior submits that the state court judgment, as amended by QWS and presented to the Bankruptcy Court, is an absolute nullity. See id.

Third, Superior advances that the Bankruptcy Court erred by allowing Claim No. 6. See id. Superior claims that the Bankruptcy Court attempted to sever the attorney fee provision, ignore the "expenses" provision, and allow the remaining principal balance to satisfy the strict, nonmalleable mandate of Louisiana law. See id. It argues that because the state court judgment offered in support of Claim No. 6, standing alone, is not a final judgment, it is unenforceable. See id. at 11–12. Furthermore, Superior avers that QWS's unauthorized addendum also makes the state court judgment an absolute nullity. See id.

at 12. Therefore, it submits that Claim No. 6 should have been disallowed in its entirety because there was not a valid basis for an allowable claim. See id.

Fourth, Superior asserts that Claim No. 6 is disallowable under 11 U.S.C. § 502(d) until the money is returned to the estate. See id. Superior argues that the record reflects that QWS received a $20,000 payment within 90 days prior to the bankruptcy filing, which could qualify as an avoidable preferential transfer under 11 U.S.C. § 547. See id. While the Bankruptcy Court noted that no avoidance action had yet been filed, Superior contends that the presence of the transfer warrants at least temporarily disallowance of the claim. See id.

Fifth and finally, Superior avers that it is an abuse of discretion to allow Claim No. 6 without any valid proof of the sum due by it or QWS. See id. Superior submits that this claim is based in part on an unenforceable or absolutely null judgment. See id. For all of the reasons listed in its Appellant Brief, Superior asks this Court to reverse the decision of the Bankruptcy Court and disallow QWS's claim completely. See id. at 20.

(b) QWS's Appellee Brief.

At the beginning of its brief, QWS requests oral argument. See Record Document 11 at 2. It submits that oral argument would be useful to the disposition of this appeal due to the extended factual and legal histories between the parties, as well as the procedural posture of the underlying bankruptcy matter. See id. QWS goes on to present four issues on appeal. See id. at 7.

First, QWS submits that the Bankruptcy Court did not abuse its discretion in allowing Claim No. 6. See id. at 12. QWS argues the state court judgment is final and

enforceable because it does not contemplate any further proceedings where extrinsic evidence would be presented. See id. at 12, 13. It advances that the state court judgment specifically states the principal amount owed by Superior. See id. at 14. Even if an amendment to the state court judgment was made, which QWS denies, it asserts that such amendment would be null and void, but the original state court judgment would be reinstated, final, and enforceable. See id.

Under its first argument, QWS also contends that the Bankruptcy Court correctly found that it lacked subject matter jurisdiction to review the merits of the state court judgment or the state court's denial of Superior's motion for temporary restraining order ("TRO") to enjoin enforcement of the state court judgment. See id. at 15. QWS avers that arguments about the principal amount owed are arguments Superior could have, but chose not to, raised on appeal in the state court. See id. Thus, QWS submits that the Bankruptcy Court properly rejected Superior's invitation to sit as an appellate court and second guess the state court's entry of its judgment and denial of Superior's TRO. See id. at 16.

Second, QWS asserts that the Bankruptcy Court did not abuse its discretion in overruling Superior's objection, to the extent it was based on QWS's allegedly inequitable conduct after the state court judgment was entered. See id. It advances that Superior's argument is completely rebutted by Browning v. Navarro, 887 F. 2d 553, 559 (5th Cir. 1989), which provides that actions taken after a judgment is obtained do not form a basis for overturning a state court judgment. See id. at 16–17. QWS submits that its alleged post-judgment conduct should not result in the disallowance of Claim No. 6. See id. at 17.

7

Third, QWS avers that the Bankruptcy Court did not abuse its discretion in overruling Superior's request to disallow Claim No. 6 pursuant to 11 U.S.C. § 502(d) as premature. See id. It contends that claims to recover preferential payment are core proceedings which must be brought by commencing an adversary proceeding in the bankruptcy case. See id. At the time of the hearing on its objection to Claim No. 6, QWS argues that Superior had not commenced an adversary proceeding to recover a preferential payment from QWS or obtained an order and judgment finding that QWS is liable to the estate for recovery of preferential payment. See id. QWS argues it is not liable under § 550 until Superior obtains a judgment from the Bankruptcy Court finding QWS is liable under § 550. See id.

Furthermore, QWS claims the alleged transfers in this case are not avoidable because Superior was solvent during the preference period and the payments did not enable QWS to receive more than it would under Chapter 7 bankruptcy proceedings. See id. at 18. QWS contends there is substantial evidence in the record demonstrating that Superior was solvent in the 90 days before it filed its bankruptcy petition. See id. In Superior's summary of assets and liabilities for non-individuals, it lists total liabilities of $821,136.36. See id. Superior also states in its schedules that the total value of all of its property at the time of the petition was $983,352.00. See id. at 18–19. Because the value of Superior's property was greater than the sum of its debt, QWS asserts that Superior was solvent. See id. at 19. Thus, QWS submits that the Bankruptcy Court did not err in denying Superior's objection as premature. See id.

Fourth and finally, QWS avers that the Bankruptcy Court did not abuse its discretion in overruling all of Superior's other objections because they were barred by res

judicata. See id. For all of the reasons listed in its Appellee Brief, QWS requests that this appeal be denied with prejudice. See id.

### (c) Superior's Reply Brief.

Superior first asserts that QWS misapplies the law and jurisprudence throughout its Appellee Brief. See Record Document 12 at 2. Specifically, Superior contends that QWS misstates the holding in Monster Rentals, LLC v. Coonass Const. of Acadiana, LLC, 2014, 1200 (La. App. 3 Cir. 4/1/15, 162 So. 3d 1264). See id. It submits that Monster "holds no sway over whether the original judgment was a valid and enforceable judgment." Id. Additionally, Superior argues QWS has taken "great steps to avoid the unethical nature of the addendum which was added to the judgment…." Id. at 3. Superior advances that the judgment offered by QWS in support of its proof of claim is final, unamendable, and unenforceable. See id. at 4. Superior claims that standing alone, the judgment does not support a debt in any amount because it is not a valid final judgment. See id. Thus, Superior submits that the Bankruptcy Court should not have accepted the flawed judgment in support of any amount. See id.

Second, Superior avers that QWS's actions meet all three elements to demonstrate equitable subordination. See id. at 5. It argues the first element is met because QWS engaged in inequitable conduct by submitting two different versions of its alleged judgment—each with differing terms and inflated values—and by failing to inform the state court and the Bankruptcy Court that these modifications were not judicially authorized. See id. Superior asserts that the second element is also met because the altered claims significantly inflated QWS's expected recovery by over $100,000.00, thereby injuring other creditors whose distributions would be diluted if the inflated claim

were allowed. See id. It continues that the third and final element is met because subordination would promote, rather than undermine, the equitable principles embodied in the Bankruptcy Code by ensuring that a party does not profit from misrepresentation and procedural abuse. See id. Superior submits that QWS's filings were not inadvertent errors, but calculated acts designed to increase its recovery. See id.

**III. Analysis.**

As an initial matter, the Court will deal with QWS's request for oral argument in its Appellee Brief. See Record Document 11 at 2. While there may be an extended factual and legal history between the parties, the Court finds oral argument unnecessary. After reviewing the record, the Court has sufficient information to decide the appeal without oral argument. In analyzing the appeal, the Court will consider four separate issues, which are discussed below.

(1) Did the Bankruptcy Court err in allowing QWS's Claim No. 6 in the total amount of $390,150.12, which consists of $364,945.88 in principal and $25,204.24 in interest?

The Court analyzes this question under the de novo review standard because it deals with a question of law. Louisiana Code of Civil Procedure article 1951 provides the rule on amending a judgment as follows:

> On motion of the court or any party, a final judgment may be amended at any time to alter the phraseology of the judgment or to correct deficiencies in the decretal language or errors of calculation. The judgment may be amended only after a hearing with notice to all parties, except that a hearing is not required if all parties consent or if the court or the party submitting the amended judgment certifies that it was provided to all parties at least five days before the amendment and that no opposition has been received. A final judgment may not be amended under this Article to change its substance.

LA. CODE CIV. P. art. 1951. Louisiana courts have interpreted this article to mean that a judgment can be amended "as long as the amendment takes nothing from or adds nothing to the original judgment." Monster, 162 So. 3d at 1267 (quoting Villaume v. Villaume, 363 So. 2d 448 (La. 1978) (quotation omitted)). The substance of a judgment can only be altered "upon a request for a new trial or by appeal." Id. (quoting Oliver v. Dep't of Pub. Safety & Corr., 94-1223 (La. App. 1 Cir. 6/23/95), 657 So. 2d 596) (emphasis & quotation omitted)).

The Louisiana Third Circuit Court of Appeal has consistently held "that the inclusion of the exact dollar amounts representing the 'reasonable attorney's fees' substantively changed the original judgment.'" Id. Therefore, in the instant case, it would be improper to amend the original state court judgment to set forth an express dollar amount of attorney's fees. See id. Furthermore, "[t]here is no statutory authority that allows a trial court to fix a specific amount of attorney fees after a judgment awarding attorney fees in an unspecified amount has become final." Id. Here, it is undisputed that the state court judgment against Superior is final, as no appeal was brought. In fact, Superior confirmed with the Bankruptcy Court that no such appeal was taken and the state court judgment was final. See Record Document 3 at 25, 37, 38.

Superior is merely questioning the enforceability and validity of the state court judgment because it did not specify the amount of attorney's fees, which is outside the jurisdiction of both this Court and the Bankruptcy Court under the Rooker-Feldman doctrine. The Rooker-Feldman doctrine "applies when a state court judgment is 'final.'" Matter of Gilani, No. 23-40477, 2024 WL 340822, at *3 (5th Cir. Jan. 30, 2024). The Fifth Circuit explains the classic Rooker-Feldman situation as follows: "the losing party in state

11

court thereafter commenced a proceeding in federal court, complaining of injury by the state-court judgment and seeking review and rejection of it by the federal court." Id.

Superior cites to Dalcourt v. Moyer, 2018-412 (La. App. 3 Cir. 12/6/18), 260 So. 3d 694, to support its argument. In Dalcourt, the Louisiana Third Circuit held that "a valid judgment must be precise, definite, and certain." Id. at 697. If a final judgment is rendered upon a money demand, it "must indicate the amount of recovery with certainty and precision." Id. "'[I]f the amount must be determined by a future contingency or ascertained by extrinsic reference (or is otherwise indefinite and uncertain), it is not a proper judgment.'" Id. (quoting Kimsey v. Nat'l Auto. Ins. Co., 13-856 (La. App. 3 Cir. 2/12/14), 153 So. 3d 1035, 1038). Superior argues that since the amount of attorney's fees was not determined, the state court judgment is not final, and the Rooker-Feldman doctrine does not apply.

The Court disagrees, as Dalcourt is distinguishable because the contemplated judgment included specific language anticipating "a future contingency and extrinsic evidence…." 260 So. 3d at 697. Additionally, the court in Dalcourt was not presented with the same competing theories of law as the instant case. A more appropriate comparison can be made with the Louisiana Third Circuit's opinions in Monster and Opelousas Auth. The Third Circuit found that the judgments in both cases were final even though the amount of attorney's fees was not fixed. See Monster, 162 So. 3d at 1268; Opelousas Auth. v. Toledo, 2000-00706 (La. App. 3 Cir. 12/6/00), 773 So. 2d 294, 296. The state court judgment in the instant case does not contain language anticipating a future contingency or extrinsic evidence. While this Court recognizes the instant appeal raises

competing theories under Louisiana law, it must reconcile them to ultimately resolve the appeal.

This Court acknowledges that Superior and/or QWS should have included the specific amount of attorney's fees in its proposed final judgment submitted to the state court. See Monster, 162 So. 3d at 1268. Alternatively, the state court "should have included a specified amount of attorney fees in the original [] judgment." Id. Despite the failure to include a specific amount, however, "the judgment is [] final, and it may not now be substantively amended." Id. Whether the Bankruptcy Court or this Court "agrees or disagrees with the state-court judgment herein" is irrelevant "because even if the state court erred, 'the judgment is not void [and must] be reviewed and corrected by the appropriate state appellate court.'" Matter of Gilani, 2024 WL 340822, at *4.

It is simply not within the purview of this Court or the Bankruptcy Court to determine whether the state court judgment is proper with respect to the unspecified attorney's fees. Superior did not timely appeal the state court judgment; thus, it is a final judgment. As both Superior and QWS correctly stated, this Court cannot substantively amend the state court judgment to fix the attorney's fees provision. Other courts facing similar issues have reverted back to and upheld the original state court judgment, and this Court will follow precedent and do the same.

Additionally, Superior asserts the Bankruptcy Court erred because it enforced only part of the state court judgment and ignored the invalid portion dealing with attorney's fees. Paragraph two of the Bankruptcy Court's Order disallowed QWS's claim for attorney's fees. See Record Document 1-1 at 2. The Court believes this finding in the

13

Order is not in compliance with what other Louisiana courts have done in similar situations. In Monster and Opelousas Auth., the Louisiana Third Circuit simply reinstated the state court's original judgment. The appellate court did not mention how the issue surrounding the attorney's fees would be resolved because doing so would have been outside the scope of its duties.

When the Bankruptcy Court disallowed the attorney's fees claim, it essentially held that provision to be unenforceable, thereby enforcing only part of the state court judgment, which is impermissible under Louisiana law. This Court finds that the proper remedy here is to reinstate the state court judgment, even though the amount of attorney's fees is undetermined. Any possible further relief surrounding the attorney's fees provision should be addressed by the appropriate state court. Paragraph one of the Order, allowing Claim No. 6 in the total amount of $390,150.12, is proper and is thereby **AFFIRMED**. Paragraph two of the Order disallowing QWS's claim for attorney's fees is **REVERSED**.

<u>(2) Did the Bankruptcy Court err in overruling Superior's request to disallow QWS's Claim No. 6 pursuant to 11 U.S.C. § 502(d) as premature?</u>

The Court analyzes this question under the de novo review standard because it deals with a question of law. 11 U.S.C. § 502(b) provides that "if such objection to a claim is made, the court after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition…." 11 U.S.C. § 502(d) states:

> Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title,

> unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

These subsections must be read together. Under subsection (b), a court is only required to determine the amount of such a claim once a petition is filed. Thus, when reading subsections (b) and (d) together, a court is only required to disallow a claim once a petition is filed. In the instant case, no petition has been filed, and the Bankruptcy Court did not err when it decided not to disallow QWS's Claim No. 6 pursuant to § 502(d) because it was premature. See Record Document 3 at 7, 8, 12–13.

In fact, at the hearing, Superior agreed that it must file and prove its claim first. See id. at 8, 13. It is this Court's understanding that Superior asserted all of its objections at one time to preserve them on appeal. See id. at 12. Out of an abundance of caution, Superior asserted this objection under § 502(d) to avoid potential timeliness issues on appeal. Therefore, this Court finds that the Bankruptcy Court did not err in overruling Superior's objection under § 502(d). The plain language of the statue requires a claim to be filed before the Court must act. The statement found in paragraph three of the Bankruptcy Court's Order is therefore **AFFIRMED**.

<u>(3) Did the Bankruptcy Court err in overruling Superior's objection to the extent it was based on QWS's alleged inequitable conduct?</u>

The Court analyzes this question under the de novo review standard because it deals with a mixed question of law and fact. Equitable subordination is authorized under 11 U.S.C. § 510(c) "to redress creditors' injuries caused by a claimant's unjust conduct." <u>Dooley v. MB Indus., LLC</u>, No. 18-1039, 2019 WL 3812834, at *3 (W.D. La. Aug. 13, 2019). While the Bankruptcy Code does not provide the circumstances in which equitable

15

subordination is appropriate, the Fifth Circuit in In re Mobile Steel Co. established a three prong test: "(1) the claimant must have engaged in inequitable conduct; (2) the misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant; and (3) equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Code." In re SI Restructuring, Inc., 532 F. 3d 355, 360 (5th Cir. 2008). The Fifth Circuit also added an additional requirement: "a claim should be subordinated only to the extent necessary to offset the harm which the debtor or its creditors have suffered as a result of the inequitable conduct." Id. at 360–61.

Even though QWS's attached "STATEMENT OF SUMS DUE" in state court and attached "Exhibit A to Proof of Claim" in Bankruptcy Court were not disclosed with either court, its proposed 18 percent interest was not imposed by either court. See Record Document 1-1 at 2. Rather, the Bankruptcy Court reverted back to the state court judgment's language, which imposed an interest calculation based on the judicial interest rate. The Bankruptcy Court held that from February 1, 2024, the date of judicial demand, until September 20, 2024, the filing of the petition for relief, the judicial interest rate was 8.75%, which is significantly lower than an 18% interest rate.

During the bankruptcy proceeding, QWS seemingly agreed to the 8.75% interest rate and argued that this rate reduced its Claim No. 6 by over $200,000. See Record Document 3 at 39. Superior did not assert a lower judicial interest rate. While the state court judgment did not provide a specific amount of interest, it provided a way to calculate the appropriate amount. Thus, the Bankruptcy Court did not err by overruling Superior's objection and calculating the judicial interest rate from the date of judicial demand, as permitted by the state court judgment. QWS's alleged inequitable conduct did not injure

16

Superior more than what was contemplated in the state court judgment; therefore, paragraph four of the Bankruptcy Court's Order is **AFFIRMED**.

<u>(4) Did the Bankruptcy Court err in overruling all of Superior's other objections?</u>

The Court analyzes this question under the abuse of discretion review standard because it deals question of fact. Neither the Bankruptcy Court's Order nor the submitted briefing explain Superior's "other objections" that were overruled. This catch-all phrase is only mentioned briefly in QWS's Appellee Brief; Superior does not address these "other objections" in its Appellant Brief or Reply. Therefore, this Court finds that the Bankruptcy Court's catch-all language in paragraph five was likely precautionary, as other objections had been raised throughout the hearing and either withdrawn or declared moot. Without further argument or information, this Court need not conduct a deeper analysis. Thus, the Bankruptcy Court did not abuse its discretion in overruling all of Superior's other objections, and paragraph five of the Bankruptcy Court's Order is **AFFIRMED**.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the Bankruptcy Court's April 2025 Order is **AFFIRMED IN PART AND REVERSED IN PART**. Paragraphs one, three, four, five, and six are **AFFIRMED**. Paragraph two disallowing QWS's claim for attorney's fees is **REVERSED**. QWS's claim for attorney's fees, as set forth in Claim No. 6, is neither allowed nor disallowed. The state court judgment's language controls, and any possible further relief regarding attorney's fees should be sought with the appropriate state court.

A Judgment consistent with this Ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 16th day of July, 2025.

_____
UNITED STATES DISTRICT COURT JUDGE